## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Trisha Whitmire and Emily Yanes de
Flores, individually, and on behalf of all
others similarly situated,

        Plaintiffs,

        v.

MONAT GLOBAL CORP.

        Defendant.

Civil Action No. 1:18-CV-20636-DPG

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER, A TEMPORARY RESTRAINING ORDER, AND A PRELIMINARY INJUNCTION

Defendant Monat Global Corp.'s ("Monat") Response to Plaintiffs' Motion for a Protective Order, a Temporary Restraining Order, and a Preliminary Injunction, is noteworthy for the admissions that it makes. Monat admits that it took "swift legal action" to sue persons who are and were part of the putative class here, in an effort to muzzle them, which is part of the very conduct that Plaintiffs seek to enjoin. Monat proudly trumpets the fact that it is actively trying to take action against persons who Monat has unilaterally declared to be "hate bloggers," when these persons are often nothing more than normal people who used Monat products, had an adverse effect, and who shared their personal stories online. The very tone of Monat's Response here demonstrates that Plaintiffs' claims of harassing, intimidating, and coercive communication are not hyperbolic.

Monat argues that the lawsuits cited were on file prior to this class action, and therefore its intimidating actions were permissible. Monat's entire theory is that because some of its harassing, intimidating, and coercive conduct pre-dates the filing of this lawsuit by a few days or weeks, this renders all of the case law cited by Plaintiffs inapposite. This is as absurd as it

sounds on its face because the letters that Monat sends as a precursor to filing suit were sent to many class members who are understandably fearful that the lawsuits are sure to follow.

Critically, it is just not true that all of Monat's communications with putative class members pre-dates the filing of this case. As the Declaration of Toni Miller (attached hereto as Exhibit 1) shows, Monat filed a lawsuit against her after this lawsuit was on file and was still communicating with her in March 2018, attempting to get her to settle the defamation lawsuit filed against her in a manner that would silence Ms. Miller, and to get her to release any claims that she may have against Monat. See Ex. 1, Declaration of Toni Miller, Paragraph 9. Monat's entire Response is therefore predicated upon a misrepresentation to this Court.

Further, the Declaration of Samantha Rose establishes that the intimidating communications occurred after the date that this lawsuit was filed. Ms. Rose testifies that on March 13, 2018, she received threatening audio messages from Kristen Elizabeth Waymire, a Monat Market Partner. See Ex. 2, Declaration of Samantha Rose, Paragraph 5. Critically, Ms. Rose is a part-time accountant, a purchaser and user of Monat products, and not a "disgruntled hair stylist" with some alleged ulterior economic motive for sharing her Monat adverse reaction story online. *Id.* at Paragraph 3.

Moreover, if Monat is being genuine in its arguments that it isn't engaging in any behavior that seeks to impact participation in this putative class, there would be no reason to oppose the relief sought by Plaintiffs. Monat protests too much here – if it isn't engaging in any coercive behavior against the members of the putative class, then there is no reason for Monat to oppose a narrow Court order banning such behavior. Monat's opposition makes plain that it not only has engaged in behavior designed to diminish participation in this class action, but that it fully intends to continue to engage in such behavior, even after the filing of this lawsuit.

Monat also seeks to hide behind what it argues is insufficient evidence in support of Plaintiffs' contentions that Monat has engaged in, and continues to engage in, harassing, intimidating, and coercive conduct vis-à-vis the putative class.  While Plaintiffs do not concede that the evidence submitted in support of its motion is insufficient, Plaintiffs submit additional declarations showing the false statements that Monat demanded that putative class members adopt.  For example, Toni Miller's declaration unequivocally states that Monat demanded that she publish the following false statements, false statements pre-drafted by Monat:

> "Over the last several months I have made multiple statements about Monat and its products. I had absolutely no scientific or factual information to back up any of those claims. I conducted no research or investigation before I made those statements. I cannot prove that anything I said was true. I am sorry that I made those statements without any basis to say them."

Ex. 1, Declaration of Toni Miller, Paragraph 9.

Monat complains loudly in its Response about "baseless accusations" and "egregiously false statements," and then turns around and makes its own "egregiously false statement" when it claims it has "never sought any declarations of false statements whatsoever." Monat Response at 12.  Yet Monat itself admits that it sent Toni Miller a coercive settlement proposal dated March 6, 2018.  See Monat Response at Page 10.   A copy of Monat's coercive letter is attached to Ms. Miller's Declaration, and the document unequivocally shows that Monat was inducing Ms. Miller to make the false statements that are set out in her declaration.  Not only that, but the settlement proposal also required Ms. Miller to agree in advance to not make any statement that the actions taken under the settlement agreement, including posting a false statement on social media, were not "coerced, forced upon you, or taken unwillingly."  Ex. 1, Settlement Proposal, Paragraph 11.  All of this conduct occurred after this class action lawsuit was filed.

A similar story is told in the declaration of Emily Story, an assembler for a production company with no ties to the hair care industry.  Ms. Story has personal experience with the

adverse effects caused by Monat's products, and contributed her observations about those adverse effects online. Ex. 3, Declaration of Emily Story, Paragraphs 3 and 4. In response, Monat sent a threatening cease and desist letter that demanded Ms. Story post the following false statements on social media:

> "I've recently removed one or more posts about Monat because they contained false statements about Monat and its products" and "Based on the number of posts in this group containing false information about Monat, we have decided to shut it down."

Ex. 3, Declaration of Emily Story, Paragraph 5. Then, after this class action was filed, Monat's Market Partners began threatening Ms. Story with lawsuits, accused her of lying, and slandered her with epithets like "Icky Girls," "a bunch of stylists losing money," and "F*** off." *Id.* at Paragraph 7.

Echoing Ms. Story's deposition is that of Natasha Young, who was also subjected to the same sort of threats and disparaging epithets from Monat Market Partners. See Exhibit 4, Declaration of Natasha Young, Paragraph 5. These threats were in response to Ms. Young sharing her personal story of abnormal menstrual cycles after using Monat products. *Id.*

In addition, Plaintiffs submit the declaration of Sandy Merschrod Aab, a New Jersey salon owner with 37 years' experience as a cosmetologist. Declaration of Sandy Merschrod Aab, attached hereto, as Exhibit 5. Like Ms. Miller, Ms. Merschrod Aab states that Monat sent her a letter inducing her to make the following false statements on social media:

> "I've recently removed one or more posts about Monat because they contained false statements about Monat and its products" and "Based on the number of posts in this group containing false information about Monat, we have decided to shut it down."

Ex. 5, Declaration of Aab, Paragraph 5. Ms. Aab further declared that even after this class action lawsuit was filed, she continued to receive threats from Monat's Market Partners, including being harassed on public posts, threatened with being sent to Monat compliance, and threatened

4

with lawsuits.  Ex. 5, Declaration of Aab, Paragraph 7.  Tellingly, Monat's Market Partners are not authorized to make statements about Monat without prior approval from Monat, undercutting the claim by Monat in its Response that the Market Partners are acting "independently," and not at "Monat's behest."  Monat Response at Page 13.  Indeed, as the March 6, 2018 letter to Toni Miller shows, Monat was requiring those persons with whom it settled to "provide reasonable assistance with respect to others who might be defaming MONAT."  Ex. 1, Miller Letter, Paragraph 10.  This further shows that the Monat threats to Ms. Aab, threats that continued after the filing of this class action, were directed by Monat.

Finally, Breanna Haspert's Declaration states that she was sent the same kind of cease and desist letter as Toni Miller.  See Declaration of Breanna Haspert, attached hereto as Exhibit 6.  Like the others above, Monat demanded that Ms. Haspert adopt the same false statements:

> "I've recently removed one or more posts about Monat because they contained false statements about Monat and its products" and "Based on the number of posts in this group containing false information about Monat, we have decided to shut it down."

Ex. 6, Haspert Declaration, Paragraph 5.  Ms. Haspert also testifies that on March 25, 2018, after this lawsuit was filed, she was threatened by Monat Market Partner Karen Whitman. *Id.*  She was also placed on a public "Black List" by Shea Ross, a Monat Associate Market Mentor, and the founder of Monat "Team Believe," and was publicly harassed by Ms. Ross. *Id.*  Ms. Haspert continues to receive harassing messages from Monat Market Partners to this day. *Id.*

Monat's Policies and Procedures for its Market Partners is replete with admonitions that Monat Market Partners may only disseminate the messages approved by Monat.  Section 3.1 requires adherence to the Marketing Plan.  See Monat Policies and Procedures, attached hereto as Exhibit 7.  Section 3.2 requires Market Partners to use only Monat approved advertisements, sales aids, promotional materials, or internet web pages. Section 3.2.2. restricts all online

conduct.  Section 3.6.2 A encourages all Market Partners to promote Monat products.  And most importantly, Section 3.6.1 makes Market Partners responsible "for all of his or her verbal and written statement made regarding MONAT products," and requires the Market Partners to indemnify Monat if any liability arises from a non-approved statement.  To suggest that the Market Partners would start "free-forming" threats against the declarants here is completely contrary to Monat's own policies and procedures, and any such representation is not credible.

Further evidence that Monat was directing the actions of its Market Partners comes in the form of a Declaration from Angie Collins, attached hereto as Exhibit 8.  Ms. Collins purchased Monat products for herself, her mother, and young daughter, and has firsthand experience with the adverse effects.  After sharing her Monat adverse reaction story online, she was contacted by the Monat Market Partner who sold her the products.  During this contact, it became clear that this Monat Market Partner was sharing Ms. Collins's information and Facebook posts with someone else, as the Market Partner mistakenly sent a screenshot of one of Ms. Collins's posts to her.  Ex. 8, Declaration of Angie Collins, Paragraph 5.  The communications from Monat's Market Partner caused Ms. Collins to delete her Monat story from social media, out of fear that she was going to be turned in, threatened, or sued.  *Id.*

Plaintiffs also submit the declaration of Shannon Schuman George, attached hereto as Exhibit 9, who both purchased and used Monat hair care products, and who had personal experience with the impact of Monat's hair care products.  Ms. George declares that after this class action lawsuit was filed, her name was included on the published "Black List" created by Shea Ross, a Monat Associate Market Mentor, and the founder of Monat "Team Believe."  Ex. 8, Declaration of Shannon Schuman George, Paragraph 5.  This list (the same list that Breanna Haspert was placed on) was shared with thousands of Monet Market Partners and labeled Ms. George an "active hate group member and vile MP Attacker."  *Id.*   There is no question that

6

Monat's creation of a "Black List," via a highly placed Monat Market Mentor, was explicitly aimed at suppressing participation in this class action lawsuit, by scaring people like Ms. George into non-participation for fear of being tarnished with the "hate group" moniker.

Plaintiffs further submit the declaration of Jeanelle Dascher, a purchaser and user of Monat hair products, attached hereto as Exhibit 10. Ms. Dascher's experience with Monat's coercive communications occurred after the filing of this lawsuit and involved contact with her employer that caused her to be subjected to a compliance interview with her employer. Ms. Dascher used the Monat products on both herself and her children and had first-hand experience with the adverse effects caused by Monat products. Ms. Dascher shared a news link about the filing of this class action lawsuit on her Facebook page, one of her friends commented on it, and then on March 15, 2018 (weeks after this lawsuit was filed) an unknown person (Sarah Whitehouse Wareham) sent messages to Ms. Dascher's friend, threatening to slander Ms. Dascher's name and reputation. See Ex. 10, Declaration of Jeanelle Dascher. On March 23, 2018, Ms. Dascher was informed by her employer that Monat had contacted her employer to complain about a comment that another one of her friends made about Sarah Whitehouse Wareham's post. *Id.* This triggered a compliance interview with Ms. Dascher's employer, and she is still awaiting a final decision about whether her employment will be affected by Monat's communications. *Id.*

Heather Dean, a former Market Partner of Monat who personally used the products and suffered adverse effects, was extensively harassed and intimidated by a number of Monat Market Partners. See Ex. 11, Declaration of Heather Dean. Another declaration comes from Anna Leduc, attached hereto as Exhibit 12, a Texas hair designer with 30 years' experience who personally observed the adverse effects caused by Monat products. After this lawsuit was filed, Ms. Leduc received threats from Monat Market Partners, including statements to the effect that

she was in a "hate group," and threats that she would be sued.  See Ex. 12, Declaration of Anna Leduc, Paragraph 5.  Ms. Leduc's professional Facebook page was also hacked after this lawsuit was filed, and she has a good faith belief that the hacking was in response to her Monat group membership, based upon the activity on her account after the hacking.  *Id.*

Debbie Johnson is a retired Air Force veteran, a former Monat Market Partner, and a personal user of Monat products who experience adverse effects from the use of Monat products. After resigning from Monat, she put her own personal video about her Monat experience up on Facebook, only to be met with threatening comments that caused her to take her video down for fear of being sued.  See Exhibit 13, Declaration of Debbie Johnson, Paragraph 5.  After this lawsuit was filed, she was subjected to a number of email messages from Monat that called her and others who similarly shared their stories "haters."  *Id.* at 6.  As a result of these Monat communications, Ms. Johnson developed a legitimate fear of being sued.  *Id.*  And Alicia Baker felt so intimidated by Monat's pervasive campaign of intimidation that she dropped out of a planned media interview. See Declaration of Alicia Baker, attached hereto as Exhibit 14.

Contrary to Monat's arguments, there is more than enough evidence to meet Plaintiff's burden to prevail under Rule 23(d) protective order.  It is also manifest that the coercive communications in which Monat fully intends to continue to engage are not aimed solely at persons who allegedly want to defame Monat to sell competing hair care products.  Neither Ms. Rose, Ms. Story, Ms. George, Ms. Dascher, nor Ms. Collins have any financial motivation to publicly malign Monat products.  They are not "a bunch of stylists losing money."  Monat's characterization of all the "malicious statements" about its products coming from disgruntled competitors is misleading at best.

Monat is also wrong on the law.  Tellingly, Monat attempts to sidestep the binding caselaw that controls this case, by relegating it to a mere footnote, by distorting the relief that

Plaintiffs seek here, and then by casually claiming the caselaw to be inapposite. *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), cited extensively by Plaintiffs, controls this case.  Contrary to Monat's assertion in Footnote 8 of its Response, the injunction sought by Plaintiffs is <u>not</u> "incredibly broad in scope."  As in *Kleiner*, Plaintiffs are not seeking an order enjoining Monat from communicating with members of the putative class about any legitimate "routine business matters unrelated to the lawsuit."   *Kleiner*, 751 F.2d at 1206.  Plaintiffs here are seeking much more narrowly tailored relief – a cessation of the intimidating and coercive communications like the letters sent to Ms. Nittinger, Ms. Miller, and others, letters that demand that these individuals put false statements up on social media.  Plaintiffs also seek an order enjoining Monat from filing any more SLAPP-style defamation suits against putative class members like Ms. Miller.  As the Eleventh Circuit in *Kleiner* noted:

> In the realm of litigation, a fair and just result often presupposes restraints on the speech of the parties. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 2207 n. 18, 81 L.Ed.2d 17 (1984).

*Kleiner*, 751 F.2d at 1206.

Monat's attempt to distinguish *Kleiner* on the grounds that it was "only restraining commercial speech," and that Monat's speech here is "non-commercial" is inexplicable.  Monat cannot seriously contend that the communications that Plaintiffs seek to restrain do not have, at base, Monat's economic interests at heart.  As this Court noted in *Tobinick v. Novella*, 142 F. Supp. 3d 1275 (S.D. Fla. 2015), aff'd sub nom. *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935 (11th Cir. 2017):

> In *Central Hudson Gas and Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court described commercial speech as "expression related solely to the economic interests of the speaker and its audience."

*Tobinick*, 142 F. Supp. 3d at 1280.  Monat itself provides all the argument that is needed to prove this point, when it asks this Court for a $10 million bond to protect its economic interests, if Monat's speech is restrained in the manner that Plaintiffs propose.  Also, there is nothing about the communications that Monat seeks to persist in making that serves the public interest, as quashing truthful dialogue about the adverse effects caused by Monat products (adverse effects that Monat also admits in its Response at Page 8, albeit in the context of attributing the adverse effects to alleged "allergies" or "hypersensitivities") does not serve the public interest.  Unlike the scientific articles that were found not to be commercial speech in *Tobinick*, the content of Monat's harassing and coercive communications is not "directed towards raising public awareness of scientific issues, rather than promoting an economic interest." *Tobinick*, 142 F. Supp. 3d at 1282.  Monat's harassing and coercive communications are solely aimed at serving its commercial interests, by eliminating all public criticism of its products.

At base, Monat's entire response can be distilled into two arguments – one, that Plaintiffs did not adduce enough evidence to meet their burden, and two, that the law doesn't support Plaintiffs' position.  As Plaintiffs have unequivocally demonstrated above, neither of these arguments has any merit, and this Court should grant the injunctive relief sought by Plaintiffs, enjoining Monat from continuing to engage in its campaign of intimidation, harassment, and coercion against the members of this putative class.

Respectfully submitted this 28th day of March, 2018.

**VARNELL & WARWICK, P.A.**

/s/ Janet R. Varnell
JANET R. VARNELL, FBN:  0071072
BRIAN W. WARWICK, FBN:  0605573
P.O. Box 1870
Lady Lake, FL  32158
Telephone: (352) 753-8600
Facsimile: (352) 504-3301

10

*bwarwick@varnellandwarwick.com*
*jvarnell@varnellandwarwick.com*
*kstroly@varnellandwarwick.com*

Charles J. LaDuca (To Apply Pro Hac Vice)
charlesl@cuneolaw.com
William H. Anderson (To Apply Pro Hac Vice)
wanderson@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813

JOHN A. YANCHUNIS, FBN: 0324681
jyanchunis@forthepeople.com
**MORGAN & MORGAN**
COMPLEX LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505 Telephone
(813) 223-5402 Facsimile

JOEL R. RHINE (*Pro Hac Vice*)
jrr@rhinelawfirm.com
DARA DAMERY (*Pro Hac Vice*)
dld@rhinelawfirm.com
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Road, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

*Attorneys for Plaintiffs and the Proposed Class*

<u>**CERTIFICATE OF SERVICE**</u>

 I HEREBY CERTIFY that on March 28, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>**/S/ JANET R. VARNELL**</u>
**JANET R. VARNELL**
